Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL ESPECIAL**

| In Re: 10 Year Plan Federally Funded Competitive Process<br><br>Genera PR, LLC<br><br>        Recurrente<br><br>Negociado de Energía de Puerto Rico<br><br>        Recurrido | KLRA202400630 | **REVISIÓN ADMINISTRATIVA** procedente del Negociado de Energía de Puerto Rico<br><br>Caso Núm.: NEGOCIADO-MI-2022-0005<br><br>Sobre: Determinación de falsa representación; notificación defectuosa; violación a debido proceso de ley |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de septiembre de 2025.

Comparece Genera PR, LLC (en adelante, Genera o la parte recurrente), y nos solicita la revisión de la Resolución y Orden emitida el 17 de septiembre de 2024 por el Negociado de Energía de Puerto Rico (Negociado o agencia recurrida). Mediante el referido dictamen, la agencia recurrida le ordenó a la parte recurrente a completar el proyecto energético para finales del segundo trimestre del 2026. De lo contrario, advirtió que le impondría una multa de $25,000.00 por cada día de incumplimiento, en virtud del Artículo 6.36 de la Ley 57-2014, *infra.*

Examinada la totalidad del expediente a la luz del estado de derecho vigente, confirmamos el dictamen recurrido mediante los fundamentos que expondremos a continuación.

Número Identificador

SEN2025 _____

**I.**

El 23 de enero de 2023, el Negociado emitió una Resolución mediante la cual aprobó el requerimiento de propuestas (RFP, por sus siglas en inglés) presentado por la Autoridad de Energía Eléctrica (AEE) para la adquisición de unos sistemas de generación de energía denominados *emergency peakers* en las instalaciones de Jobos, Daguao y Palo Seco.

Transcurrido cierto tiempo, el 25 de mayo de 2023, Genera sometió un memorando con unas modificaciones a la propuesta radicada por la AEE. En particular, presentó un plan enmendado para la adquisición del siguiente equipo: "black start and emergency peaking resources".[1] De acuerdo con el expediente ante nuestra consideración, la parte recurrente informó que la operación comercial se alcanzaría en 18 meses, si cumplía con ciertos requisitos de permisos.[2]

En esa dirección, el 16 de agosto de 2023, Genera presentó una moción de carácter informativo. A este escrito adjuntó un documento denominado *Bi-Weekly Report- Period of August 1-15. 23* (*Exhibit A*)[3], en el cual anunció unas enmiendas a su propuesta original que supondrían un ahorro en costos y una reducción del tiempo de finalización del proyecto entre nueve (9) a doce (12) meses.[4]

Evaluada su propuesta, el 23 de agosto de 2023, la agencia recurrida dictó una Resolución y Orden. En virtud de este dictamen, autorizó la continuación del proyecto, sujeto a las siguientes consideraciones:

---

[1] Apéndice de la Solicitud de Revisión Judicial, Anejo IV, a la pág. 24

[2] Subrayamos, que, Genera no incluyó en el apéndice el memorando aducido. Así que, la información ha sido constatada por las determinaciones de hechos formuladas por la agencia. Véase, Apéndice de la Solicitud de Revisión Judicial, Anejo IV, a la pág. 30, y Anejo XII, a la pág. 77.

[3] Destacamos que el documento sometido por Genera aparece sombreado por razón de confidencialidad en la mayoría de sus partes. Así que, la información ha sido constatada por las determinaciones de hechos formuladas por la agencia. Véase, Apéndice de Revisión Judicial, Anejo V, a las págs. 39-46, y Anejo XII, a la pág. 77.

[4] Apéndice de la Solicitud de Revisión Judicial, Anejo XII, a la pág. 77.

> *The changes proposed by Genera in Exhibit A of the August 16 are consistent with IRP Order. Hence, the Energy Bureau allows the RFPs process to continue in the manner described by Genera in in Exhibit A of the August 16 Motion. The Energy Bureaus orders Genera to submit draft RFP for its review and approval within ten (10) days of the notification of this Resolution and Order. The Energy Bureau warns Genera that the Commercial Operation Dates ("COD"), as per established in the pro forma contract as part of PREPA´s RFPs, will remain unaltered. Therefore, the Energy Bureau cautions Genera that noncompliance with this Resolution and Order will result in the imposition of fines pursuant to Article 6.36 of Act 57-2014. As such, in this case, the Energy Bureau will impose a fine of twenty-five thousand dollars ($25,000) per day of nom-compliance until compliance is achieved.*
>
> *The Energy Bureau orders Genera to ensure that federal funds are not debarred and that applicable requirements are met.*[5] (Énfasis nuestro).

Luego de una serie de incidencias procesales, el 8 de noviembre de 2023, el Negociado dictaminó una Resolución y Orden, en la cual aprobó finalmente el RFP modificado por Genera.

Sin embargo, constatado un retraso en el proyecto, el 30 de julio de 2024, la agencia recurrida emitió una Resolución y Orden. Mediante este dictamen, le requirió a Genera que presentara una serie de informes junto al estimado del tiempo para completar el proyecto. Además, le concedió un término de 10 días para informar cómo su plan ha reducido los costos y ha acelerado la fecha de operación en comparación a la propuesta de la AEE. A tales efectos, dictaminó el siguiente pronunciamiento a modo de advertencia:

> *The Energy Bureau warns Genera´s no compliance with any provision of this Resolution and Order may result in the imposition of fine pursuant to Act 57-2014 and applicable Energy Bureau´s regulations and any other appropriate administrative sanctions, as deemed appropriate by Energy Bureau.*[6] (Énfasis nuestro).

---

[5] Apéndice de la Solicitud de Revisión Judicial, Anejo VI, a la pág. 48.
[6] Apéndice de la Solicitud de Revisión Judicial, Anejo XII, a la pág. 79.

Así ordenado, el 9 de agosto de 2024, la parte recurrente sometió una moción para presentar un escrito intitulado *Peaker Project: RFP Process Comparison.*[7] Respecto a los costos, manifestó que su proyecto, a diferencia del plan de la AEE, generaría un ahorro en combustible de $30,000,000 o $60,000,000 sin descuentos, entre otros extremos.[8] No obstante, aseveró que el costo final del proyecto se encuentra bajo negociación.[9] Asimismo, informó que la adquisición de los suministros del equipo se completaría en el tercer trimestre de 2024, y su respetiva entrega se efectuaría entre el 2026 y el 2027.[10]

Con posterioridad, el 19 de agosto de 2024, Genera presentó una moción para someter informe mensual sobre el estatus del proyecto en atención al dictamen del 30 de julio de 2024. En su informe, notificó que el equipo energético entraría en funcionamiento durante el cuarto trimestre del 2026, una vez se efectúen las pruebas correspondientes.[11] Precisó, además, que las operaciones concernientes al *peaker* estarían completadas entre el primer al cuarto trimestre del 2027.[12]

Ante la información provista por la parte recurrente, el 28 de agosto de 2024, el Negociado dictó una Orden de Mostrar Causa por la cual no debía imponérsele una multa administrativa de $25,000.00. En esta, determinó que existe causa suficiente para creer que incurrió en falsa representación (*misrepresentation*) respecto a los costos proyectados y el término para completar el plan.[13] A raíz de lo anterior, le ordenó a proveer la siguiente información:

> *The basis for the representations made regarding cost savings and the COD timeline;*

---

[7] Apéndice de la Solicitud de Revisión Judicial, Anejo XIII, a las págs. 86-89.
[8] Apéndice de la Solicitud de Revisión Judicial, Anejo XIII, a la pág. 87.
[9] Apéndice de la Solicitud de Revisión Judicial, Anejo XIII, a la pág. 87.
[10] Apéndice de la Solicitud de Revisión Judicial, Anejo XIII, a la pág. 89.
[11] Apéndice de la Solicitud de Revisión Judicial, Anejo XIV, a la pág. 97.
[12] Apéndice de la Solicitud de Revisión Judicial, Anejo XIV, a la pág. 97.
[13] Apéndice de la Solicitud de Revisión Judicial, Anejo XV, a la pág. 106.

*A detailed explanation of the reasons for the discrepancies between the projected and actual costs and timelines;*

*Any mitigating circumstances or evidence that Genera wishes to present in defense of its actions.*

*A clarification on whether the increased costs incurred under Genera's administration (any amount exceeding PREPA's original estimate) are expected to be recovered from the Federal Emergency Management Agency ("FEMA") or any other sources.*[14]

Al amparo de este decreto, la agencia recurrida emitió la advertencia esbozada a continuación:

*The Energy Bureau war Genera that, in accordance with Section 6.36. of Act 57-2014:*

*(a) The Energy Bureau shall impose administrative fines for violation of this Act, or the regulation and orders issued thereunder committed by any person or electric power company subject to its jurisdiction, of up to a maximum of twenty-five thousand dollars ($25.000) per day. Said fines shall never exceed five percent (5%) of the gross sales, fifteen percent (15%) of the net income, or ten percent (10%) of the net worth of the sanctioned person or the electric power company. The greater of aforementioned amounts corresponding to the most recent taxable year shall be the amount of the fine.*[15]

Así ordenado, el 5 de septiembre de 2024, Genera presentó una moción en cumplimiento de orden. En síntesis, arguyó que las discrepancias entre los resultados proyectados y el estado actual del plan se originaron por factores externos, que no están bajo su control, y no por falsas representaciones. Especificó que los ajustes del proyecto responden a cambios económicos y regulatorios que impactaron de modo significativo los requisitos y los costos de este. Por lo anterior, alegó que la multa propuesta resulta arbitraria e irrazonable.

Por su parte, el 13 de septiembre de 2024, la AEE radicó una moción en cumplimiento a una orden dictaminada el 6 de septiembre de 2024 por la agencia. En esencia, sostuvo que las afirmaciones de Genera son engañosas (*misleading*) y no reflejan

---

[14] Apéndice de la Solicitud de Revisión Judicial, Anejo XV, a las págs. 106-107.
[15] Apéndice de la Solicitud de Revisión Judicial, Anejo XV, a la pág. 107.

con precisión la realidad del proceso de contratación, ni las circunstancias bajo las que transfirió el proyecto a la parte recurrente.[16]

Examinados ambos argumentos, el 17 de septiembre de 2024, el Negociado emitió una Resolución y Orden, en la cual determinó que el retraso del proyecto y el aumento en los costos respondieron a la falsa representación (*misrepresentation*) desplegada por Genera.[17]  Consecuentemente, le ordenó a la parte recurrente a completar el proyecto para finales del segundo trimestre del 2026.  Asimismo, le advirtió que de no culminar el proyecto dentro del término requerido, le impondría una multa administrativa, según se establece a continuación:

> ***The Energy Bureau wars Genera under Art. 6.36 of Act. 57-2024:***
> ***(i) noncompliance with this Resolution and Order, regulation and/or applicable laws may carry the imposition of fines and administrative sanctions of up to $25,000.00 per day.***[18]
> (Énfasis nuestro).

En desacuerdo, el 7 de octubre de 2024, Genera sometió un escrito de reconsideración para solicitar la celebración de una vista.  En este, argumentó que el dictamen administrativo afecta sus intereses libertarios y propietarios, toda vez que establece erróneamente que la parte recurrente incurrió en *misrepresentation.*  Agregó que, tal determinación incide de manera negativa en su reputación comercial.

Tras examinar sus planteamientos, el 11 de octubre de 2024, el Negociado emitió una Resolución en la cual declaró No Ha Lugar la solicitud de reconsideración.  A su vez, reiteró que el proyecto debe completarse en el segundo trimestre de 2026.  De incumplir este mandato, reiteró que la entidad recurrente estará sujeta a una multa diaria de hasta $25,000.00.

---

[16] Apéndice de la Solicitud de Revisión Judicial, Anejo XVIII, a las págs. 148-149.
[17] Apéndice de la Solicitud de Revisión Judicial, Anejo IXX, a la pág. 159.
[18] Apéndice de la Solicitud de Revisión Judicial, Anejo IXX, a la pág. 160.

Inconforme, el 12 de noviembre de 2024, Genera recurrió ante nos mediante una Solicitud de Revisión Judicial, en la cual señaló la comisión de los siguientes errores:

*Primer Error: Erró el Negociado de Energía al notificar la Resolución y Orden de 17 de septiembre de 2024, pues no incluyó las advertencias sobre el derecho de la parte afectada por la decisión administrativa de solicitar reconsideración ante la agencia, y de presentar un recurso de revisión judicial, y la forma y términos aplicables.*

*Segundo Error: Erró el Negociado de Energía al notificar la Resolución de 11 de octubre de 2024, pues no incluyó las advertencias sobre el derecho de la parte afectada por la decisión administrativa de solicitar reconsideración ante la agencia, y de presentar un recurso de revisión judicial, y la forma y términos aplicables. Además, el NEGOCIADO tampoco discutió ni abordó los argumentos presentados por Genera en su Moción de Reconsideración.*

*Tercer Error: Erró el Negociado de Energía al afectar derechos propietarios y de libertad de Genera sin un debido proceso de ley, al hacer una adjudicación de hechos falsas representaciones, sin la celebración de una vista evidenciaría en la que se pudiera escuchar prueba sobre las posturas opuestas de las partes.*

En respuesta a los señalamientos de error uno (1) y dos (2), el 5 de diciembre de 2024, este Tribunal de Apelaciones emitió una Sentencia, en la cual desestimamos el recurso de epígrafe, por entender que carecíamos de jurisdicción como resultado de los defectos identificados en la notificación.

No obstante, el 17 de julio de 2025, el Tribunal Supremo de Puerto Rico dictó una Sentencia, en la cual revocó nuestro dictamen. Razonó que, una notificación defectuosa no priva de jurisdicción automáticamente, toda vez que, los "derechos procesales de Genera no se vieron violentados".[19] Así resuelto, devolvió el recurso ante nos con la finalidad de que lo atendiéramos en sus méritos, en virtud del mandato notificado el 5 de agosto de 2025.

Superada la controversia jurisdiccional, el 25 de agosto 2025, emitimos una Resolución en la cual le concedimos a la parte

---

[19] Sentencia (CC-2025-0107) del Tribunal Supremo de Puerto Rico, a la pág. 12.

recurrida un término a vencer el 16 de septiembre de 2025 para someter su alegato en oposición. Tras unas incidencias procesales, que ameritaron un término adicional, el 24 de septiembre de 2025, el Negociado radicó su Alegato en Oposición a Revisión Judicial.

Con el beneficio de la comparecencia de las partes, procedemos a discutir el marco legal pertinente a la controversia ante nuestra consideración.

**II.**

**A.**

La Constitución de Puerto Rico establece que ninguna persona será privada de su libertad o propiedad sin un debido proceso de ley. Art. II, Sec. 7 Const. ELA, LPRA, Tomo 1. Véase, también, Emdas. V y XIV, Const. EE. UU., LPRA, Tomo 1. Esta cláusula constitucional procura que, toda persona tenga un proceso justo con todas las debidas garantías que ofrece la ley en el ámbito judicial como en el administrativo. *Com. Elect PPD v. CEE et al.*, 205 DPR 724, 743 (2020); *Aut. Puertos v. HEO*, 186 DPR 417, 428 (2012) (citando a *Marrero Caratini v. Rodríguez Rodríguez*, 138 DPR 215, 220 (1995)). En ese sentido, el debido proceso de ley se manifiesta en dos vertientes distintas, a saber: (1) vertiente procesal y (2) vertiente sustantiva. *PVH Motor v. ASG*, 209 DPR 122, 130 (2022); *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 394 (2018).

Así pues, la vertiente procesal le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento justo y equitativo. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 DPR 881, 887-888 (1993); *López Vives v. Policía de P.R.,* 118 DPR 219, 231 (1987). A esos efectos, el debido proceso de ley requiere el cumplimiento de las siguientes

exigencias: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de abogado, y (6) que la decisión se base en el expediente. *Vázquez González v. Mun. de San Juan,* 178 DPR 636, 643 (2010); *Rivera Rodríguez & Co. v. Lee Stowell,* etc., *supra,* a la pág. 889. Véase, también, *Domínguez Castro et al. v. E.L.A.* 178 DPR 1, 48 (2010). Tales exigencias aplican con vigor en procedimientos de naturaleza adjudicativa. Véase *Román Ortiz v. OGPe,* 203 DPR 947, 954 (2020).

Por otro lado, la vertiente sustantiva del debido proceso de ley representa una barrera para aquellas acciones estatales arbitrarias o caprichosas que afecten los derechos fundamentales de los ciudadanos. *Indulac v. Unión,* 207 DPR 279, 296 (2021); *Rivera Rodríguez & Co. v. Lee Stowell,* etc., *supra,* a la pág. 887. En esencia, esta acepción persigue proteger y salvaguardar los derechos fundamentales de las personas. *Com. Elect PPD v. CEE et al., supra,* a la pág. 743; *U. Ind. Emp. A.E.P. v. A.E.P.,* 146 DPR 611, 616 (1998).

Con esa explicación en mente, conviene destacar que, en el contexto administrativo, la exigencia del debido proceso de ley no constituye una camisa de fuerza que prive a la agencia de dirigir a sus procesos de forma justa, práctica y flexible. *Katirias's Café v. Mun. de San Juan,* 2025 TSPR 33, 215 DPR ___ (2025); *Almonte et al. v. Brito,* 156 DPR 475, 481 (2002). Así pues, esta protección constitucional aplicable a los procedimientos adjudicativos de las agencias no tiene la misma rigidez que en la vía judicial, según se discute en *Román Ortiz v. OGPe, supra,* a la pág. 954:

> *En el ámbito administrativo, el debido proceso de ley no tiene la misma rigidez que en los procedimientos adjudicativos ante los tribunales. Álamo Romero v. Adm. de Corrección, 175 DPR 314, 329 (2009). Esto obedece en gran medida a la necesidad que tienen las*

*agencias administrativas de tramitar sus procedimientos de forma expedita y a la pericia que se presume tienen para atender y resolver los asuntos que le han sido delegados. Báez Díaz v. E.L.A., 179 DPR 605, 623 (2010).* Véase, también*, López Vives v. Policía de P.R, supra,* a la pág. 231.

No obstante, como antes reseñamos, esta garantía operará con mayor fuerza cuando se afecte un interés propietario o libertario de una parte. Ahora bien, de verse afectado algún interés, la agencia evaluará si procede la celebración de una vista, ya que no es un derecho que procede automáticamente. En *Ramírez v. Romero Barceló,* 112 DPR 716, 730-731 (1982), el Tribunal Supremo de Puerto Rico adoptó los siguiente criterios para examinar si procede celebrar una vista: (1) los intereses afectados por la acción oficial; (2) el riesgo de una determinación errónea que prive a la persona del interés protegido mediante el proceso utilizado y el valor probable de garantías adicionales o distintas; y (3) el interés gubernamental protegido con la acción sumaria, inclusive la función de que se trata y las cargas fiscales y administrativas que conllevaría el imponer otras garantías procesales.

**B.**

La Asamblea Legislativa de Puerto Rico adoptó la Ley de Transformación y ALIVIO Energético, Ley Núm. 57-2014, según enmendada, 22 LPRA 1051, (Ley Núm. 57-2014 o Ley de ALIVIO Energético), según enmendada, para fomentar aquellas iniciativas que reduzcan el costo de la electricidad, reestructuren el sistema de energía y sirvan de fuerza motora para fomentar el desarrollo económico y competitivo. Exposición de Motivos, Ley de ALIVIO Energético, *supra.* Así pues, "con esta iniciativa legislativa vanguardista se establecen las bases para que podamos enfrentar y superar los retos energéticos que tenemos como sociedad y

promover un futuro brillante para nuestras futuras generaciones". Íd.

En virtud de lo anterior, el Art. 1.2(d) de la Ley Núm. 57-2014, *supra,* instaura como política pública la implantación de aquellas estrategias para lograr eficiencia en la generación, la transmisión y la distribución de la energía eléctrica de manera que asegure su disponibilidad y su suministro a un costo asequible, justo y razonable.  22 LPRA sec. 1051(d).  Al amparo de esta política pública, el inciso (r) del artículo precitado reconoce la existencia del Negociado de Energía Eléctrica de Puerto Rico para garantizar el cumplimiento de la política pública energética:

> *Habrá un ente independiente regulador de energía, que tendrá amplios poderes y deberes para asegurar el cumplimiento con la política pública energética, las disposiciones y mandatos de esta Ley, y para asegurar costos energéticos justos y razonables mediante la fiscalización y revisión de las tarifas de la Autoridad de Energía Eléctrica y de cualquier compañía de servicio eléctrico.* 22 LPRA 1051(r).

En aras de desempeñar su deber ministerial, el inciso (a) del Art. 6.3 de la Ley de ALIVIO Energético, *supra,* dispone que dicho organismo administrativo tiene el deber de fiscalizar y asegurar la cabal ejecución e implementación de la política pública sobre el servicio eléctrico en Puerto Rico. 22 LPRA 1054b.  Por su parte, el inciso (d) del referido artículo precisa que esta agencia tiene la obligación de fiscalizar la calidad, eficiencia y confiabilidad del servicio eléctrico provisto por cualquier compañía de energía certificada en Puerto Rico para garantizar una red robusta que atienda las necesidades de la isla Íd.  Investido de tales deberes, esta entidad administrativa tiene autoridad para emitir órdenes y establecer multas que permitan dar cumplimiento a las facultades concedidas por legislación, y para la implementación de esta Ley, de acuerdo lo prescrito en el inciso (oo) del Art. 6.3 de esta pieza legislativa. Íd.

En virtud de tales poderes, el Negociado goza de la facultad para imponer multas administrativas, según se establece en el Art. 6.36 de la Ley Núm. 57-2014, *supra*:

> *Artículo 6.36. — Penalidades por incumplimiento. (22 L.P.R.A § 1054jj)*
>
> *El Negociado de Energía, de conformidad con los poderes, deberes y facultades otorgados mediante esta o cualquier otra ley del Gobierno de Puerto Rico podrá: (a) Imponer multas administrativas por violaciones a esta Ley, a sus reglamentos y a sus órdenes, incurridas por cualquier persona o compañía de energía sujeta a la jurisdicción de la misma, desde diez mil dólares ($10,000), hasta un máximo de ciento veinticinco mil dólares ($125,000) diarios por cada violación. No obstante lo anterior, dichas multas nunca excederán del cinco por ciento (5%) de las ventas brutas anuales (lo que incluye cualquier tarifa por servicio "service fee" en el caso de operadores privados), del quince por ciento (15%) del ingreso neto anual o del diez por ciento (10%) de los activos netos de la persona o compañía de energía sancionada. La cantidad que resulte mayor de las antes mencionadas, correspondiente al año contributivo anterior o más reciente, será la cantidad multada.*
>
> *(b) Si la persona o compañía de energía regulada persiste en la violación de esta Ley, sus reglamentos o sus órdenes, el Negociado de Energía podrá imponerle multas adicionales no menores de quince mil dólares ($15,000) hasta un máximo de doscientos cincuenta mil dólares ($250,000) diarios por cada violación. En tal caso, y mediante determinación unánime del Negociado de Energía, podrá imponer multas de hasta el doble de las limitaciones a base de ventas, ingreso o activos establecidos en el inciso (a) de este Artículo. 22 LPRA sec. 1054jj. (Citas omitidas)[20]*

**c.**

Es norma reiterada que, los tribunales revisores estamos llamados a conceder deferencia a las decisiones de las agencias, pues estas poseen la experiencia y el conocimiento especializado

---

[20] Es menester puntualizar que, las cuantías mencionadas responden a unas enmiendas adoptadas la Ley Núm. 2-2025, cuya Exposición de Motivos lee así:

> *Basado en las experiencias que el Gobierno de Puerto Rico experimentó en la contratación de la operación y mantenimiento de la red eléctrica, a través de alianzas público-privadas, el Gobierno de Puerto Rico manifiesta la necesidad imperante de facultar al Negociado de Energía de una mayor autoridad fiscalizadora sobre las entidades que están reguladas. Por ello que aumentemos las penalidades que el Negociado de Energía pueda imponer a las entidades reguladas como un disuasivo al incumplimiento y que con ello se logre optimizar los servicios rendidos por los operadores regulados mientras se mejora el servicio eléctrico para los consumidores.*

sobre los asuntos que se les han delegado *Katirias's Café v. Mun. de San Juan, supra*; *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). En virtud de este principio, las determinaciones administrativas están revestidas de presunción de legalidad y corrección. *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020); *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008). Por lo que, solo es posible sustituir "el criterio de la agencia por el del tribunal revisor cuando no exista una base racional para explicar la decisión administrativa". *Voilí Voilá Corp. et al. v. Mun. Guaynabo,* 213 DPR 743, 754 (2024); *Capó Cruz v. Jta. Planificación et al.*, *supra*, a la pág. 591.

Cónsono con lo anterior, los tribunales revisores no debemos intervenir en las determinaciones de hechos siempre y cuando surja del expediente administrativo evidencia sustancial que las respalde. *The Sembler Co. v. Mun. De Carolina,* 185 DPR 800, 821-822 (2012). La evidencia sustancial es aquella prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Capó Cruz v. Jta. de Planificación et al.*, *supra*, a la pág. 591; *Rebollo v. Yiyi Motors,* 161 DPR 69, 76-77 (2004). Así pues, si en la solicitud de revisión la parte afectada no demuestra la existencia de otra prueba, entonces las determinaciones de hechos deben ser sostenidas por este tribunal revisor. *Domínguez v. Caguas Expressway Motors, Inc.,* 148 DPR 387, 398 (1999).

En cambio, respecto a las conclusiones de derecho, tenemos autoridad para revisarlas en todos sus aspectos de acuerdo con la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9675. Es decir, estamos facultados para revisarlas completa y absolutamente. *IFCO Recyclint v. Aut. Desp. Sólidos,* 184 DPR 712, 745 (2012); *Assoc. Ins. Agencies, Inc. v.*

*Com. Seg. P.R.*, 144 DPR 425, 436 (1997). Ello, pues, no podemos imprimir un sello de corrección a aquellas determinaciones o interpretaciones administrativas irrazonables, ilegales o contrarias a derecho. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 127 (2019).

Ahora bien, tal facultad no implica "la sustitución automática del criterio e interpretación del organismo administrativo". *Capó Cruz v. Jta. Planificación et al., supra,* a la pág. 591; *Rebollo v. Yiyi Motors, supra* a la pág. 77. Nuestra deferencia cede en limitadas circunstancias, a saber, cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación o la interpretación de las leyes o reglamentos; (3) ha mediado una actuación arbitraria, irrazonable o ilegal, o (4) la actuación administrativa lesiona derechos constitucionales fundamentales. V*oilí Voilá Corp. et al. v. Mun. Guaynabo, supra* a las págs. 754-755; *Super Asphalt v. AFI y otro, supra*, a la pág. 819.

### III.

En el caso de epígrafe, Genera sostiene que el Negociado vulneró su debido proceso de ley al concluir que incurrió en *misrepresentation* sin celebrar una vista. Argumenta que, tal determinación trasgrede su reputación e imagen comercial (*goodwill*). En vista de ello, nos peticiona la revocación del dictamen recurrido a los fines de que ordenemos la celebración de una vista administrativa.

Por su parte, el Negociado señala que, la decisión impugnada no constituye una adjudicación formal, toda vez que no impuso una multa administrativa. Por tal razón, aduce que no celebró una vista administrativa. No obstante, puntualiza que la parte recurrente tuvo la oportunidad de exponer sus argumentos y someter evidencia por medio de sus escritos, en garantía de su

debido proceso de ley.  Por último, precisa que su actuación "se trata de un procedimiento regulatorio *ex parte* y no adversarial, destinado a evaluar el cumplimiento del RFP con la política pública energética de Puerto Rico y las órdenes del Negociado".[21]

Examinado sosegadamente el expediente ante nuestra consideración, determinamos que la Resolución impugnada no lesiona las exigencias mínimas procesales aplicables al contexto administrativo.[22]  Tampoco impacta los intereses propietarios o libertarios de la parte recurrente, ni incide en sus derechos constitucionales fundamentales.  Por tanto, contrario a lo expresado por Genera, colegimos que no procede ordenar la celebración de una vista administrativa.

Ello, pues, una lectura de la Resolución en cuestión nos devela que esta no constituye una imposición de una multa administrativa, es decir, no es una adjudicación final.  Conforme a lo anterior, subrayamos que, la decisión objetada es una advertencia, cuyo contenido dispone que, de no concluirse el proyecto en el segundo trimestre del 2026, se procederá a imponer una multa administrativa**:**

> ***The Energy Bureau wars Genera under Art. 6.36 of Act. 57-2024:***
> ***(i) noncompliance with this Resolution and Order, regulation and/or applicable laws may carry the imposition of fines and administrative sanctions of up to $25,000.00 per day.***[23]
> (Énfasis nuestro).

En vista de tales circunstancias, no identificamos que el Negociado haya vulnerado el debido proceso de ley de la parte recurrente.  En esa línea, nos corresponde recordar que, en el ámbito administrativo esta garantía constitucional no tiene la misma rigidez que en la vía judicial.  Por lo que, su aplicabilidad

---

[21] Alegato en Oposición del Negociado de Energía Eléctrica, pág. 24.
[22] **Nos circunscribiremos a discutir el señalamiento de error tercero. Ello, pues, en virtud de la Sentencia emitida el 17 de julio de 2025, por el Tribunal Supremo de Puerto Rico se atendieron los señalamientos de error uno (1) y dos (2) relativos al asunto jurisdiccional.**
[23] Apéndice de la Solicitud de Revisión Judicial, Anejo IXX, a la pág. 160.

no puede impedir que una agencia actúe con la celeridad y la pericia que requieren los asuntos bajo su autoridad. Así pues, recalamos que, en el contexto agencial la protección del debido proceso de ley exige una aplicación de forma justa, práctica y flexible, como bien ocurrió en el caso presente.

Por último, la parte recurrente señala que, la agencia incidió al establecer que incurrió en *misrepresentation* sin celebrar una vista. Puntualizamos que, ese pronunciamiento no surgió en abstracción de la comparecencia de Genera, quien manifestó que el retraso y aumento de costos del proyecto respondió a cambios económicos y regulatorios. Acorde con lo informado, no procede que sustituyamos el criterio administrativo, el cual responde a un proceso evaluativo ante la agencia, en virtud de su autoridad fiscalizadora reconocida en el Art. 6.3(a) de la Ley Núm. 57-2014, *supra.* Además, tal criterio está respaldado en evidencia sustancial obrante el expediente administrativo y en su conocimiento especializados.

Así dictaminado, advertimos que, mediante el dictamen recurrido, el Negociado procura, —en un ejercicio de su deber ministerial— que Genera complete el proyecto dentro del término requerido. En virtud de lo anterior, concluimos que la parte recurrente no aportó prueba para derrotar la presunción de legalidad y corrección que reviste a la decisión administrativa, la cual merece nuestra deferencia. Por consiguiente, confirmamos la Resolución impugnada, pues esta no lesiona el debido proceso de ley que ampara a Genera, ni constituye una actuación arbitraria, irrazonable o ilegal por parte de la agencia.

**IV.**

Por los fundamentos expuestos, los que hacemos formar parte de este dictamen, confirmamos la Resolución recurrida, emitida por el Negociado de Energía Eléctrica de Puerto Rico.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones